Good morning. If it pleases the Court, Peter Homer on behalf of the Appellant Schools here. Hang on just a second. Judge Callahan. I'm afraid, Noah, that the record won't pick you up. We're still getting along. I don't think I said anything. I thought it was me. This is the second time I've tried to sit in the wrong seat here, so I'm sorry. Go ahead, Counsel. The school submits that there's a straightforward two-step analysis that the Court should apply here, and it compels the reversal of the trial court's retention of what I call the embedded public injunctive claims. And the rationale that the trial court used was the California State enunciated rule, the Broughton-Crews rule, if I'm pronouncing it correctly. So the two steps that I think I would like to take the Court through on this is, first, did the trial court correctly apply the effective vindication or inherent conflict rule? And the answer, as shown by the Supreme Court's recent decision in Amex, which was mentioned in the prior argument, is an unequivocal no, because that rule only applies in circumstances where there is a federal statutory clash with the Federal Arbitration Act. And then the second step in the analysis is, if the trial court had properly employed the standard preemption principles against the Broughton-Crews rule, does that rule continue to survive? And, again, our position is that that's an unequivocal no. Now, in declining to compel the entirety of the asserted claims to individual arbitration and retaining in the Court those embedded public injunctive claims, the trial court made a fundamental legal error by using that effective vindication rule, or what he, I think, described, and the Courts use these interchangeably, is an inherent conflict analysis. And Appellate's counsel here perpetuates that error by continuing to argue in their briefs and submissions here that this Court should likewise use that same kind of effective vindication or inherent conflict rule to determine whether California public injunctive claims can be compelled to arbitration. Well, there was some discussion in American Express where the three dissenting justices decisively rejected the idea that the effective vindication of rights doctrine applies to state law. Correct. And then the justices in the majority were the same ones that were in the AT&Tmo versus Concepcion majority. So I'm going to so, you know, I'm trying to look in terms of if it's an intermediate court of appeal where our things end up with the Supreme Court, what would the Supreme Court say here? And we confronted, I was on the Kilgore panel, but we didn't get to the Broughton-Crews. We, I guess you'd say, dodged the bullet there. But that being said, there does seem to be an indication that Broughton-Crews might be RIP after AT&Tmobility, and I'm going to talk with the other side about that. But I do have some questions about, say, if this were, if it is dead and it were referred to arbitration, how, and the arbitrator issues an injunction, how will that be enforced? What happens in contempt proceedings? Yes. And I handle literally hundreds of these kinds of cases around the country for different schools. And so I deal with this all the time. And as Your Honor is probably aware, all the arbitral forms, whether it's the American Arbitration Association, FINRA, the Securities Contacts, JAMS, their rules specifically contemplate and provide that arbitrators can grant injunctive relief. So that's a starting point right there. So what I think happens here is that the judges who have dealt with this and have said and speculated about the problem to which you're asking about or the issues you're asking about don't really understand what happens then. There is nothing about an arbitral award, whether it's an interim award or a final award, which is self-executing. They have no power to enforce that. What you must then do is you must take … Add a court. That's right. And the Federal Arbitration Act provides the mechanism for doing that. You file a petition to either affirm the award or to vacate the award on those types of things. The court looks at it. And at the point in time if it confirms the award, then it becomes a judgment of the court itself. And the court would handle contempt. Correct. And so the speculation that you saw by the California Supreme Court and by the trial judge here about this idea that there's going to be no effective way of administration of these types of things I think is wrong. Well, if that's the case, then what's wrong with Judge Carter ordering all of the rest of the case to arbitration but reserving the injunction to the results of the arbitration? But that isn't what he did here. What he did, and if you look at the docket here, Judge Carter did, which is the antithesis of what Concepcion … He actually refused to stay the proceedings. The docket will reflect that he required that the school answer. He required that Rule 26 disclosures be made. And discovery was going to be underway but for the stay, which he refused to do and which this court granted. And so that isn't done. There are a number of these other cases which I've been involved with in California where judges have done exactly what you're talking about, where they've kept the public injunctive aspects of it, to see, as I believe you might have been the one who asked that question at the Kilgore argument itself. Well, I've been struggling with this issue. And I'm coming from the same point of view I think as Judge Callahan on this issue. I thought we should have addressed the issue in Kilgore, but we didn't because the company was out of business. But here that is not the case. And so I don't see how we can avoid not addressing the public injunction question. But I'm trying to determine in giving direction to the district courts, what if we were to simply say to them, when you refer this matter to arbitration, you can certainly reserve the question of whether or not injunctive relief will be necessary until you get the arbitration award. And then you can decide at that point whether an injunction in aid of the judgment is required or not. And I believe you asked that question at Kilgore or something along those lines. I'm not sure I got a very good answer to it, but I don't remember what the answer was. And I actually watched the tape, and so I came anticipating the right answer. So what answer did I get? So the answer to that is that I think that what you proposed there is actually inconsistent with what the Supreme Court has repeatedly said has to be done in these circumstances. The analysis that you go through is, is there an enforceable arbitration agreement? The court has already found that. Are the claims which are here within the scope of the arbitration agreement? And then the Supreme Court has admonished trial courts, you have no discretion under those circumstances. You must compel those issues over to arbitration. Well, maybe I didn't make my question very clear. What's wrong with the district court essentially staying any further action in federal court, sending the case to arbitration, awaiting the results of the arbitration, if there's an award that is favorable to the plaintiff, registering that award and converting it to a judgment, and then on the basis of whatever the arbitrator found, issuing an appropriate injunction, if that's what the arbitrator directed. Well, if that is in fact what the arbitrator directs, then I think that that would work. But the problem, and maybe I misunderstood your question. Well, I didn't articulate it very well. And I think you answered it in that that's not what Judge Carter did here. Correct. But I'm trying to figure out a way that we can direct. The decision about public injunction, are you arguing that decision should be made by the arbitrator, that the court should not reserve that element for its own exercise of judgment? So, and I know you want a yes or no answer. So the answer is yes in theory. But if I might qualify. Both the theory and then I'm following up with practical. So give us both at the same time. Okay. So, yes. What you have to do is you have to look at the actual terms of the arbitration agreement itself to see whether it contemplates that those types of issues are actually going to be sent over to the arbitrator. As you may know, that there are a couple other cases which are pending before the Ninth Circuit where there actually is a, what I'll call an anti-public injunctive aspect of the arbitration. That's not this case. This is what Stolt-Nielsen would probably say is a silent arbitration agreement on those issues. We don't concede that a public injunctive can, in fact, be administered or granted by an arbitrator over there. Well, stop there for a second because if you don't concede that, I mean, it's got to be one place or the other, doesn't it? We concede, though, that in the first instance that is where it has to go. And that issue is not before this court today. That is an issue which we do believe needs to be sent over to the arbitrator to make that decision on it. Okay. So just logistically. So if Broughton-Cruz is RIP, the public injunction part of it in this case goes there. Then the arbitrator would be deciding the merits of the case and then looking to the factors of when an injunction is issued, weighing the winter factors or whatever, and issuing the injunction. Then you go back to court, and then the court, you have this all confirmed. And so if there is a contempt of the injunction, then the court would handle that. That's correct. Is that right? Okay. But if the arbitrator makes a decision about whether the public injunction is issued, any challenge to that falls under how you challenge an arbitration award. Correct. As opposed to if only the merits part of it is decided and then it goes back to the district court to actually issue it, then the challenge to whether the winter factors were properly applied is a different challenge. It's under abuse of discretion. That's correct. Okay. So there's that difference. Yes. But now also, though, there would be some public injunction, say, for example, where maybe you're trying to enjoin that it has something, there might be actions, so ketone actions or things or, say, the Waffle House carve-outs. Say the government is not, people that are not a party to the action, like the arbitrator wouldn't necessarily be able to issue a public injunction. That would have to do with the government in this case, right? That's correct. As much as I have tried in the past to argue that if a binding arbitration agreement would bind a state agency, Waffle House, I think, answers that, and you wouldn't be able to do that. So if we were to drink the Kool-Aid and buy your argument here and that Broughton-Cruz is gone and that this goes to the arbitrator, that it's not, there still would be an instance where arbitrators can't do, if you were to raise something there about we want to bind the federal government on this or something like that, that would be outside an arbitrator's authority, right? Correct. Correct. Well, you want to refer the question to the arbitrator. Yes. Ask the arbitrator to determine whether he's empowered to enter a public injunction. What happens if the arbitrator says, no, I'm not? Does that go back to court? I don't think so. It may, but it doesn't go there automatically. Because, remember, the public injunctive aspects that are an embedded claim, what drives these kinds of cases is the monetary damages aspect of it, and factual findings that the arbitrator could end up making on the merits of the case might very well be dispositive of whether a public injunction is warranted or not. I have a question. My concern here is that you're suggesting, I mean, there's an argument the court should retain the public injunction question because there are public interest elements, so on and so forth. And you're saying, no, all of it goes to arbitration. The court, I mean, Judge Tallman suggested an alternative, no, the court shouldn't reserve that question for itself. It all goes to arbitration. But you propose to reserve for your client the right to argue to the arbitrator that the arbitrator can't do it. Well, that seems to extinguish the cause of action, not simply decide where it gets resolved. No, no. I mean, I think it's a question of contractual interpretation, and perhaps not an appropriate one to use here. But if, in fact, there is an actual prohibition, which the school does not have here against the issuance of a public injunction, that's an instance where the arbitrator arguably doesn't have the power to go ahead and do that. There could be severability issues that come into play and all that. But this is akin to the very kind of procedure, and I've fought this issue a number of times, about class arbitration, the Reed v. Corinthian case, which is a Fifth Circuit case, where we prevailed on that issue before the Fifth Circuit on this. That's what happens is you end up having an order compelling the case over to the arbitrator to make a decision in a clause construction setting or in a class certification decision as to whether it can proceed on a class basis. And one of the arguments that was made in Stolt-Nielsen in the Reed case, which is like you, the arbitrator, don't have the power or the authority to go ahead and enter class arbitration. It's beyond your power to do that. And so that's one of the arguments that possibly could be made over there. I'm not suggesting we're necessarily going to do that here. There's arguments I'm sure counsel would make on the other side about why an arbitrator had the authority to do that. But I think here what we've got is unambiguous mandate under the Supreme Court's decisions to send these things over. The arbitration agreement here is broad in its scope. It says any claims, no matter how pleaded, styled, anything like that, are supposed to be sent over to the arbitral forum. And so what we're going to do is we're going to go over there, and clearly the arbitrator is going to have to make those factual determinations. It's going to be conducting it under the consumer rules. That's the way they do it. I want to win on the case, but our question is premise. Suppose you're going to lose. Suppose there's a finding of liability. What can the arbitrator do? What can anybody do? And what I'm hearing is a suggestion that, okay, hypothetical. It's not your client. It's some other business that's done something. So the arbitrator finds liability and finds circumstances that in other circumstances would justify the entry of a public injunction under California law. And you're going to argue to the arbitrator you're not empowered to do that, even though you've made the necessary findings that would support the entry of such an injunction. You can't do it because you're an arbitrator. Well, in that case, it seems to me somebody ought to be able to do it, and why wouldn't the case at that point at least return to the courthouse? Well, again, I think the question of the arbitrator's authority to do what he does is going to depend on the exact language of the arbitration agreement itself. It's a question of contractual interpretation, and we've seen the court. Well, you say yours says nothing on the subject. Well, actually, there's effectively there are – there's broad language in there that says that the arbitrator can grant any remedy that's available in court, and I'm sure counsel – So what's the argument you made to the arbitrator that the arbitrator's not empowered to enter a public injunction? So if you're asking me to anticipate what I might argue over there – Well, you're reserving the right to make the argument. So, I mean, if the answer is there is none, we've got no problem, but if the answer is that there's nothing in the contract but we're going to make the argument anyway, then, yeah, we'd like the preview. Let me tell you what the argument is that you could possibly make. It is a variation, really, on Stolt-Nielsen and Concepcion and the Reed case, which involved – Reed involved the same arbitration provision that we're talking about here, and the argument there is that this is exactly akin to Stolt-Nielsen, and what it contemplates is individual bilateral arbitration, what the Supreme Court calls bilateral, what I call individual arbitration. I would concede that under those circumstances the court could grant injunctive relief as between the parties themselves who are there. It's an open question and an unsettled question at this point whether you could have an arbitrator who could grant relief that went beyond the bilateral parties to that agreement. If you follow the reasoning between – after Stolt-Nielsen and Reed, which arguably may not be a good decision anymore after the Supreme Court's decision in Oxford Health, then that would fall by the wayside. It's an unsettled question. Well, there may be circumstances, but it seems to me a public injunction is somewhat different in that rights of other parties outside the defendants and the claimant, there may be benefits received by outside parties, but no claims that they would have would seem to be extinguished or affected. I mean, a class arbitration has the effect of extinguishing somebody's claims or adjudicating somebody else's claims, the absent class member. A public injunction, the attorney general goes in and seeks a public injunction. That doesn't preclude the possibility of an individual seeking a claim for himself or herself. So I guess I hear your argument, but what troubles me, assuming, as Judge Callahan says, I drink the Kool-Aid and says, yes, this goes to arbitration, I don't know that that should permit what I think would be extinguishing a remedy that California law provides simply by inviting an argument to the arbitrator that, well, California law permits a public injunction, but you can't do it. So there's a short answer to that, which is let the arbitrator decide that. That's what the Federal Arbitration Act accomplishes. And if the arbitrator decides that he can't do it because he's an arbitrator, why wouldn't that claim then return to the court? I don't think it would be because he would decide that it was because he was merely an arbitrator. He has the authority to grant injunctive relief. The question is, is under the terms of the arbitration, the contractual provision itself, whether he has the power under Section 10 of the Federal Arbitration Act to grant. That's my point, because if he decides I don't have the power to do that, that's not a claim that can be entertained in arbitration. Why isn't that something the court can do? I haven't thought that all the way through. No court has dealt with this. It's going to be something which I suggest is going to have to play its way out. But the Supreme Court has cautioned another arbitration context, the RICO case that came out of the Southern District of Florida that went up on punitive damages issues in RICO. They said, let's not speculate about what the outcome of these issues are going to be. Send them over to arbitration, let the arbitrator decide it and sort it out, and then there will be judicial review of those kinds of things. Well, since you said, okay, that an arbitrator does have the authority to issue injunctions, but it depends on what is allowed under that contract. But let's say you go to arbitration and the arbitrator says, I'm just an arbitrator and I cannot issue injunctions, and the particular agreement allows for it. If that went back to court, is that something that you could attack, that the other side could attack somehow under the standard of reviewing arbitration awards? Because it's wrong. Let's say it's wrong. It's wrong. But is it what? Is it manifest injustice or something? No. The Supreme Court has told us that the manifest disregard for the law is no longer a standard of review in arbitration and it confines it to those four statutory bases for that. Would there be one that would cover that? If you read the Oxford Health case, which is the Sutter case, the Supreme Court says there that if an arbitrator is basically interpreting the scope of his powers and the arbitration agreement itself, whether he can grant certain relief, it's not for the court to go ahead and revisit that. But let's assume that it specifically grants, it says that a public injunction can be a part of it, but the arbitrator says I'm just, but because I'm an arbitrator, I can't do it. That's for the court. That, you know, I'm reluctant to sort of put myself out and, you know, confront that kind of situation. You know, if in fact an arbitrator felt on the merits that he was declining to do that or because he felt that he didn't. Right, on the merits it would be, it wouldn't be able to be set aside. I agree on that. But if it were just a situation the arbitrator says arbitrators cannot do this, even though this contract would allow for it. Well, then I suspect the other side would be making an argument that he was, the flip side of exceeding powers, he was refusing to exercise a power which he would have. And there would be a basis for attempting to attack it. But it's admittedly a narrow basis for review. Mr. Homer, before you sit down, and Mr. Chang I'm going to give you extra time since we've taken so much time here. I'd like you to address this question. We as a court have been wrestling with this question, as you know, for some time, since frankly before Kilgore. And one of the issues that I have been trying to get straight in my mind is the difference between claims and remedies. And the question is, is a public injunctive relief under the statute a separate cause of action or is it simply a remedy to address whatever other violations that the arbitrator finds? And does that make a difference for purposes of the application of Concepcion? Do you understand the question? I do. And so let me answer that in reverse order. I don't think it makes any difference. And I think that the brief that was submitted by the Chamber of Commerce on that makes that point very clearly. You will see some decisions that have come up where the plaintiff's bar will bring an action seeking only public injunctive relief, and obviously an award of attorney's fees that goes along with it. So I would make, I think the argument that would be made there is, is that under those circumstances, that is actually a claim. But it is also a claim that has a very specific remedy to it. So it's one of those things that I'm not sure that it really matters in the circumstance, but I think if you look at the language that the Supreme Court is using, Concepcion, and again the Chamber of Commerce's brief did a really good job on pointing this out, which is you cannot refuse to send things over to arbitration where it is a claim based on some state promulgated public policy. And that necessarily means that you can't then carve out remedies that would also be attendant to that claim, which is really what is going on here. So again, I guess it would depend in your view on what the terms of the underlying contract are as to whether the arbitrator would even have the authority to act, regardless of whether we characterize it as a claim or a remedy. That's correct. If you look at the direct TV case, which is up in front of the court at this point, there is a prohibition against public injunctive relief. I think AT&T may also have something like that in there. This is a situation where really it is an agreement which is effectively silent on that issue, and so it's kind of like what you had to deal with with Stolt-Nielsen. Well, if we were being reviewed by the Supreme Court, and if you look at the usual like majority, the usual 5-4, but then if you look at Justice Kagan and American Express and the dissenting, would you get any of those votes if we ruled your way? Well, there's sub-issues that I would get votes on. On my read of American Express's, all eight justices agree, and Justice Kagan does a great job of it in her dissent, making the point that the effective vindication analysis only applies in those circumstances where it's a clash of a federal statute with a federal arbitration. For earthly reasons. She does speak pretty spotlessly. She does. And if you go and look at the footnotes in the majority opinion, they felt it was necessary to sort of rebut some of her points that she makes. That's not one of them. So I think it's very clear that all eight of the justices, and your court has actually prefigured that. In the Conniff case, I think it's in footnote two, which is there, you mentioned the fact that it only applies in those situations where it is a clash between federal on federal. So I think Justice Kagan has got it right, and there's no disagreement from the other members of the court that in a circumstance where you have a state policy that clashes with the Federal Arbitration Act, the analysis is preemption. And then the question is, is there something that is being done here with that state policy that effectively undercuts the policies and the underpinnings of the Federal Arbitration Act? And if we had more time, I would talk to you about all the reasons, and it's in the briefs as why keeping this in these circumstances does. And really, this is probably a very good example of it, which is it created and undercuts, one, it doesn't enforce the agreement of the parties themselves, which is clear and unambiguous. And secondly, the way that Judge Carter handled it here, rather than staying the case, we were going to have two parallel proceedings going on. He was telling us, answer, rule 26 disclosures, discovery is going to move forward, and I'm going to decide those issues while in theory the arbitration is going forward. And that is antithetical to the ideas about efficiency, and it's antithetical to a lot of other decisions that have suggested that the arbitral form is to decide those factual issues on the first instance anyway. So I think on the facts of this record, based on what happened here, I believe that I'd be getting all those votes in connection with that. Clearly, Justice Kagan. Okay. I think we have given you plenty of time. Let's hear from Mr. Chang. Okay. Thank you. And I will give you some time. Thank you. Good morning, Your Honors. I'm Albert Chang on behalf of the students of Hallease. I would like to begin by addressing an issue that was a question that was discussed at length at the opening argument. Why is arbitration inappropriate for public injunctive relief? I heard two concessions from the appellant. One, under Waffle House, public injunction belongs to the government and not the parties signing onto an arbitration agreement. Number two, non-parties cannot enforce an injunctive relief order from an arbitrator. I'm still trying to think through the first one. And I think to the extent there is a concession, the government is not bound by the arbitration clause. So if the Attorney General brought an action for public injunction, I don't think defendants have a good argument today that even though the people who they're supposed to be protecting may be covered by arbitration clause, it doesn't matter. The government is not covered by an arbitration clause. They can proceed with a public injunction action. I don't know that I heard a concession that said an individual party, which under California law can bring or seek public injunction, is not bound. Quite to the contrary. Their argument is that the individual party to the arbitration agreement, if they seek that remedy, they must do so through the arbitration mechanism. That's not correct because in Brockton, that's precisely the purpose. To begin with, I'm talking about the concession you identified from your colleague. And I sure didn't hear a concession defined as you just defined it. Well, sure. The reason why Brockton held that the public injunctive relief cannot go to an arbitrator is on the contract principle. That arbitration is a matter of contract. A party can only arbitrate, a claim can only be sent to an arbitrator if the party agrees voluntarily to arbitrate that claim. And because an individual consumer cannot agree to arbitration on behalf of the public serving as a private attorney general under UCL, as a result, public injunctive relief claims cannot go to an arbitrator. But why does that permit that person who's entered the arbitration clause to bring a public injunction claim? It is true that you can't force public injunction claims generically to arbitration, but that doesn't mean that your client's entitled to bring it because your client's agreed to arbitration. No, because UCL allows my client to do it. Right, and your client can do it. Only your client's agreed to arbitrate all claims, and this is a claim. So why is it that arbitration doesn't extend to this claim? Because UCL applies to all consumers. Right, and somebody else who didn't sign this agreement can bring a lawsuit and seek a public injunction, but your client agreed to arbitration. And just like the questions that went around in the previous argument, I myself do not know of one student today who signed up to enroll in for-profit colleges after 2007 who has not signed an arbitration. Then you may not be able to find a plaintiff who can file a lawsuit. The Attorney General presumably could. And under that theory, the UCL claim for injunctive relief is gone. Why? Why can't it be arbitrated? Because, well, in Brockton, it's a... Telling me what the California Supreme Court held doesn't necessarily, I mean, I've read the case, but it doesn't necessarily tell me why that claim can't be arbitrated under the case law that binds us from the U.S. Supreme Court. Well, we submit that this is for the judgment of the California legislature and for California... Well, the Supreme Court has told you in so many words that state laws that disfavor arbitration are preempted by the FAA. Sure. So telling me that the California legislature doesn't think it's a good idea is not likely to get much traction. But this case is a case of preemption. Exactly. And the California legislature, if it enacted what you said, has had its enactment preempted by the FAA. The Supreme Court has told us that. We disagree with that, Your Honor, because... But that's the West Virginia case. I mean, the West Virginia legislature enacted a law that said that you cannot arbitrate these personal injury actions involving the patients. And the Supreme Court said if the clause says you arbitrate those claims, then the West Virginia statute falls. Right. But the Brockton-Cruz rule is much more nuanced than the West Virginia. Well, nuanced. I mean, we all use that term, but, you know, put it in English. I mean, how is that any different from the California legislature enacting the UCL? Well, because if you look at both Cruz and Brockton, neither case outright prohibits arbitration. In Cruz, Cruz actually expressly declined to rule on all injunctive relief claims, such as, and I quote, UCL injunctive actions brought by injured business competitors. Cruz is narrow. In Brockton, the court also shied away from a broad holding about all injunctive relief claims. And in Brockton, the California Supreme Court identified three shortcomings of arbitration. Number one, arbitrators, unlike the courts, are not bound by earlier decisions. Number two, arbitration awards do not automatically have effect on non-parties. And that's precisely what the appellant concedes. And number three, judges are more accountable in granting injunctive reliefs because they have public accountability. I'm struggling with, I understand what your wish list is, but I'm struggling with, like, for example, that it's the way you want it to be, but, you know, we have to, you know, I asked counsel for the appellant to talk to me about let's count some Supreme Court votes. Let's count what they've been doing on these cases. And you, for example, cite EEOC versus Waffle House. You argue that the arbitration agreement here does not apply to claims for injunctive relief because your agreement cannot bind the general public. But isn't the relief that you're seeking here largely for the benefit of the class of individuals who also signed arbitration agreements and not the public? They are for the public. No, the fact that there's a tangential benefit to the public is a separate question. The question that we're asking is why shouldn't all the students who signed this agreement to arbitrate be forced to arbitrate their UCL claim? And if that's the case, the claim will be gone because appellants will be taking the position as they have reserved to the arbitrator that. And the arbitrator may disagree. Or if the arbitrator agrees and rules that, well, as an arbitrator, I don't have that power, you've got the questions I've been raising, and I think there may be some difficult issues to face, but why do we face those now? Why do we say, well, let's assume that liability will be found and all the reasons to have a public injunction are there, but the arbitrator ultimately says, but I don't have the power. If that's going to happen, why don't we wait until then to make that decision? Because that would be speculation. You're speculating. Exactly. You're telling us that we shouldn't let anything go to arbitration because, A, the claim might succeed, and, B, the arbitrator might decide that public injunction is appropriate, but, C, the arbitrator says, but I don't have that power as an arbitrator. That's when we face the situation you pose, and isn't that speculation? That is not because the California Supreme Court has spoken that those are California policies that we need to enforce. And the United States Supreme Court has said it really doesn't give a hoot about state policies, doesn't it? Read what Justice Kagan said in Italian Colors. She couldn't have been more explicit with regard to we don't care about state law on this question. Italian Colors or American Express does not deal with preemption at all. And, huh? They decisively rejected the idea that the effective vindication of rights doctrine applies to state law. And the justices in the majority then, you know, so I don't know how you can count votes if that's what Justice Kagan says, and then you know what the justices are in the majority say. I don't know how you can persuade the Supreme Court on the argument that you're making here. That California has these policies and we need to protect them, and when she decisively rejects that. The normative force of the inherent conflict or effective vindication doctrine remains the same. Whether the Supreme Court, whether the Mitsubishi case in particular applies to state law does not matter. Italian Colors does not foreclose the California courts to decide under the normative force of the inherent conflict doctrine. Well, I think American Express does. What's the normative force? The logic behind it. What about Nitro Lift? Hasn't the Supreme Court had numerous opportunities to recognize an effective vindication or inherent conflict exception for state statutory rights in Nitro Lift, and they didn't? Well, on the other hand, in Preston, granted it's dicta, but Supreme Court dicta should not be ignored unless it's expressly overruled. In Preston, at 522 U.S. at 359, Preston expressly mentions that state substantive law operates in the context of the inherent conflict doctrine. And nobody's saying that state substantive law doesn't operate. The defendants aren't saying there cannot be a public injunction, period. State substantive law that says we don't like arbitration doesn't operate under what the U.S. Supreme Court has told us. Isn't that what you're trying to argue to us, that California doesn't like arbitration, so this kind of claim shouldn't go to arbitration? The California policy prohibits arbitration on only public injunctive relief claims. And point me to some U.S. Supreme Court decision that will say if a state doesn't like arbitration for a particular kind of claim or particular remedy, that's okay. That the FAA doesn't preempt that. It seems to me the Supreme Court said over and over again now that we don't care much about state law when it comes to the scope of arbitration clauses. We submit that the Brockton rule is sufficiently nuanced to survive. You keep saying nuanced, but I keep looking at the language, and I'm reading you right out of Marmot at 1203 of 132 Supreme Court. As this court reaffirmed last term, when state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward. The conflicting rule is displaced by the FAA, citing to Concepcion. There's nothing nuanced about that. It's about as clear and direct as the Supreme Court gets. Well, you've got another GVR case, I think it's called Sonic Calabasas, that's in front of the California Supreme Court, and they remanded it to the Supreme Court and said, look at AT&T mobility and reconsider it. Now, they haven't come out with a decision yet, but if anything, we've learned on the Ninth Circuit, when they GVR things to us and tell us, you know, reconsider in light of this particular case, they don't mean for us to distinguish it. You know, that they pretty clearly... Well, we just get reversed again when we do that, and we've tried that, too, you know, two or three times, and we get reversed each time. So we've learned our lesson, at least this panel has. We submit in this appeal that it would be the right thing to do to uphold the Brockman-Cruz rule because we disagree with... Well, how about considering my compromise? What if we promulgated a rule, in the course of writing an opinion in this case, that says the way to handle this is for the district court to stay all proceedings and defer or refer everything to arbitration and await the results of the arbitration before taking any action, if necessary, on the question of a public injunction? That is not a compromise that we will submit to because the merits of the UCL public injunctive relief claim would then go to an arbitrator. That's true. That's true. And then the district court would have to look at what the arbitrator decided. Maybe the arbitrator, as Judge Clifton suggested, would decide, I don't have the authority to do what you're asking me to do in an arbitral forum, and then you'd go back to Judge Carter and you'd say, we brought it to the arbitrator, he says it's not within the terms of the contract, so, Judge, you have to decide it on the basis of whatever else the arbitrator did. And there might be findings of fact that would be binding on the district court that would inform the application of the Winters factors and so on, but why isn't that a workable rule? Because that would conflict with the purpose of arbitration, which is for efficient and expeditious resolution of claims. And so you're proposing a two-track system that's more efficient and more expeditious? And cheaper. How is what you're proposing going to accomplish those better than what Judge Tolman just outlined? What you're proposing is what Judge Carter did, which is to, let's send this part of the case to arbitration and keep this part here and keep going with it. How is that more efficient, expeditious? Because the UCL public injunctive relief claim is a valuable claim. No, no, no, no, no, no, no. My question was specific, based on what you said. How is the two-track system more efficient and expeditious? Is it? I think the answer is it can't be. But it has to be in this case. How can it be more efficient and expeditious? Simple question. Tell me. You made the assertion. Is the assertion true? Because all those, everything else in this case is out of court except for the UCL injunctive relief. So you want two tracks. How is that more efficient and expeditious? Last try. In court, that's a requirement. Last try. Is it more efficient and expeditious to have two tracks? It's more efficient for the class. Huh? Explain. How is it more efficient for the class? Because the public injunctive relief claims that would be adjudicated in court would be brought on behalf of the public and the entire class. It's not more efficient. It's more beneficial. You're hoping for a better result. It's not efficient. There's a distinction between those words. Mr. Shane, let me give you a practical anecdote. I had a case a few years ago involving a construction contract that involved arbitration clauses. And it was a huge construction project in Nevada. I think it was a casino or something in Las Vegas. And there was a demand for arbitration. The district court ordered the parties to arbitration, but somehow a lawsuit was commenced by one of the parties in Clark County District Court that went on and became the longest civil trial in the history of Nevada. And it resulted in a $100 million judgment being entered for one of the parties. And for reasons that passeth all understanding, the arbitrator did nothing during the intervening period. And we were faced on appeal with a demand to confirm the arbitration award, or excuse me, give full faith and credit to the state court judgment that the arbitrator had never opined on. And the argument was made that we should essentially refuse to give full faith and credit to the state court judgment and send the parties to re-litigate the entire case before the arbitrator. I can't remember how we decided the case, but I don't see how we would avoid ending up in exactly the same situation under the hypothetical that Judge Clifton posed to you if we go forward with this two-track proceeding. Well, the two-track proceedings here is one track in court on behalf of the entire class and the public. The second track is only for the two individual students who are forced to arbitrate their monetary damage claims. And the result... That policy doesn't reflect a view that arbitration is disfavored by the state. I mean, it seems to me that whole construct is based on the notion that we don't like what comes from arbitration, so we want to stay in the courthouse. And California may believe that, but the U.S. Supreme Court has said that's not for the state to decide. Tell me why I'm wrong. Under the current case law, unless and until the Rockland-Crews rule is preempted under Conception and FAA... Why shouldn't we make that holding in this case? Because the text of Section 2 of the Arbitration Act does not differentiate between state and federal laws. Because case law is crystal clear that the state courts and state legislature have a role under the FAA to carve out certain general contract defenses. What's the case law you're citing? Now, contract defenses, which go to whether there's an arbitration clause that's enforceable, carving out particular claims from an arbitration clause which has been found enforceable. Judge Carter didn't say this arbitration clause was unenforceable. He didn't say the contract was unconscionable. He'd sent claims to arbitration. Now, what authority supports the proposition you can carve out some claims and keep those in the courthouse? That proposition, standing alone, would conflict with Conception. But what I am saying is that there's no state law is not a second-class citizen in the context of the FAA. And we have case laws from Preston, from footnote 9 in Conception, and also from footnote 6 in Paragraph – I'm sorry, footnote 9 from Paragraph v. Thomas, footnote 6 from Conception. All of those cases say that state courts should have a role. But didn't Justice Kagan essentially say that state courts on – that the effective vindication of rights doctrine is – they are second-class citizens. But if you want to use that language, to use your language, it seems that that's just what she said. But that does not preclude the California state courts to utilize the same logic as the inherent conflict doctrine to enforce California's policy for public injunctive relief under UCL. I see my time is up. Well, I told you I'd give you extra time. You're welcome to make any additional arguments. Yes, I would like to address on the affirmative grounds for approval – for affirmance, because we never had a chance to address that. In reply, appellant argued that this is a cross appeal. It is not. In Valdez v. Rosenbaum, it's 302 F3D-1039. It's a Ninth Circuit case from 2002. The court held that prevailing parties need not have filed a cross appeal in order to correct errors in the district court's reasoning, nor preserve alternative grounds for affirming the judgment. And that's at page 1044. And in Lee v. Burnington North, Santa Fe Railroad Company, it's 245 F3D-1102. It's a 2019 circuit case. The court held, and I quote, a prevailing party need not cross petition to defend a judgment on any ground properly raised below, as long as the parties – the parties seek to preserve and not to enlarge the judgment. And that's precisely what we're asking the court to do. It's just a one-word affirmance. It's just a statement on the ground that the claims brought below fall outside the scope of the arbitration agreement. And case law is clear that arbitration is a matter of contract. And Ninth Circuit case law has distinguished between the arising from, which is a narrow construction, and relating to, which is a broad construction. And we cited those cases like Tracer Research and Mediterranean Enterprises. Now, the arbitration agreements in this case use the arising from language. There are two things that we disagree with Judge Carter's ruling. Number one, the arising from, the narrow and broad construction has nothing to do with the words following the phrase arising from and relating to. Is that a question that should be resolved by the arbitrator? No, it's not, because the scope of the arbitration agreement, the court can't resolve the scope of arbitration agreements. Well, why can't you make those arguments to the arbitrator, that these are not properly before you? We will if we are forced to go to the arbitrator, but we have brought a case here, and Judge Carter has ruled on this issue. Judge Carter also held that the claims arose or relate to enrollment because, but for the enrollment, the plaintiffs would not have been able to bring these claims. That, in Tracer Research, at 42F3D at 1295, this court has rejected that best for argument for tort claims. And for those reasons, we ask the court to rule on the alternative grounds for affirmance and affirm Judge Carter's judgment below. All right. Thank you very much, Mr. Chang. Mr. Homer, I'll give you a couple minutes in rebuttal. Two minutes. Four quick points. First, the compromise offered by Judge Tallman is, it's already there. Section 3 contemplates exactly what you're talking about. You compel something over to arbitration, and the Federal Arbitration Act in Section 3 contemplates a stay of the proceedings. That's the procedure that you go through. Second point, if a party is challenging the enforceability of an arbitration agreement like this, it is their burden to demonstrate that it should not be enforced. And the Supreme Court has told us over and over again, particularly the Randolph case and some others that we've been involved with, is you can't engage in speculation about that. And if you look carefully at the arguments which were put forth by counsel here today, and even the arguments which were put forth by the California Supreme Court in Broughton and Cruz, they are rank speculation. They have no basis for saying those kinds of things. And indeed, one of the arguments which was made here today, and that is you see it pop up in Broughton and Cruz, is this idea that the judiciary is more accountable. Go back and read 45 years ago, the Primer-Pink case by the U.S. Supreme Court. That's Justice Black's dissent in there. That's not the majority opinion. And as the Supreme Court has said in the Buckeye check cashing case in 2006, this has been the rule for 40-plus years here on these types of things. So this idea that there is this idea that arbitrators are innately subjected to suspicion that they can't do their job is something that we need to get away from. Well, so are you saying that essentially what Judge Tallman was hypothetically proposing, you're saying that if you reverse Judge Carter and you refer everything to arbitration, that solves the same purpose? Or overrule Broughton and Cruz? Or are you saying that he's saying something that doesn't need to be said? I'm not sure. So Broughton and Cruz needs to be overturned in the circumstances, and in addition then there needs to be a directive to the court to go ahead and compel the entire individual cases over to individual arbitration, consistent with their arbitration agreements, and stay the district court proceedings until there's been an outcome in that arbitration. Okay. We have your points. Counsel, thank you very much. A very interesting case. We'll get you an answer as soon as we can. The case just argued is submitted and will be adjourned for the day.
judges: Tallman, Clifton, Callahan